**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| PATRICIA K.,[1] | : | Case No. 3:20-cv-00134 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## DECISION AND ORDER

---

## I.     INTRODUCTION

Plaintiff filed an application for Supplemental Security Income (SSI) in November 2014. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. After the Appeals Council denied Plaintiff's request for review of that decision, Plaintiff filed an action with this Court.[2] The Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g). The Appeals Council remanded the case pursuant to the District Court's order. The ALJ held another hearing

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] Assigned to Judge Michael J. Newman, Case Number 3:18-cv-00147.

pursuant to the remand order and again concluded that Plaintiff was not under a "disability" as defined in the Social Security Act. The ALJ's decision became final, and Plaintiff subsequently filed this action. This Court has jurisdiction to review the ALJ's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

This matter is before the Court on Plaintiff's Statement of Errors (Doc. 13), the Commissioner's Memorandum in Opposition (Doc. 16), Plaintiff's Reply (Doc. 17), and the administrative record (Doc. 11).

## II.     BACKGROUND

Plaintiff asserts that she has been under a disability since August 1, 2004.[3] She was forty-five years old on the SSI application date of November 21, 2014, and thus she was considered a "younger person" under Social Security regulations. She subsequently changed age categories to a "person closely approaching advanced age." *See* 20 C.F.R. §416.963(c), (d). Plaintiff has a limited education. *See* 20 C.F.R. § 416.964(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 11-10, PageID 977-92 ), Plaintiff's Statement of Errors (Doc. 13), the Commissioner's Memorandum in Opposition (Doc. 16), and Plaintiff's Reply (Doc. 17). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[3] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on November 21, 2014. See 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.").

## III. STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different

conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV.    THE ALJ'S DECISION

As noted previously, the ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1:      Plaintiff has not engaged in substantial gainful activity since November 21, 2014, the SSI application date.

Step 2:      She has the severe impairments of diabetes mellitus with associated neuropathy, mild chronic obstructive pulmonary disease, carpal tunnel syndrome, peripheral vascular disease of the lower extremities, an anxiety disorder, and depression.

4

| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
|---|---|
| Step 4: | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 416.967(b), subject to the following limitations: "No more than frequent crouching, crawling, kneeling, stooping, frequent use of the hands for handling and fingering, or climbing of ramps and stairs. No use of the lower extremities for operating foot controls, work around hazards such as unprotected heights or dangerous machinery, or climbing of ladders, ropes, or scaffolds. No concentrated exposure to respiratory irritants. The claimant is limited to performing simple and repetitive tasks, with a specific vocational preparation level of 1 or 2, with no fast-paced production work or strict production quotas. No more than occasional, superficial contact with supervisors and co-workers, as defined. No contact with the general public. The claimant is limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next.[4]" |
| | She has no past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. |

(Doc. 11-10, PageID 980-91.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 991-92.)

---

[4] Immediately following the bold RFC finding, the decision sets forth this explanation: "'Superficial contact' is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals, but as lacking the ability to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts." (Doc. 11-10, PageID 985.)

V.    **ANALYSIS**

Plaintiff asserts the following errors:

1.  The ALJ errs and neglects this Court's prior findings in his weighing and rejection of the opinions of treating sources Ms. Hoefflin and Dr. Marshall[.]
2.  The ALJ errs in failing to substantively weigh the opinions of the state agency's non[-]examining consultants, particularly in light of this Court's identification of error in the prior remand Order.
3.  The ALJ errs in his weighing of the opinions of examining psychologist Dr. Dragon and treating counselor Ms. Higgs-Adams.
4.  The ALJ's decision is not supported by substantial evidence and the Commissioner's position is not substantially justified.

(Doc. 13, PageID 1814.) For the reasons discussed below, Plaintiff's alleged errors are well-taken, and reversal is warranted.

A.    <u>**Applicable Law**</u>

Because Plaintiff's claim was filed before March 27, 2017, the opinion evidence rules set forth in 20 C.F.R. § 416.927 apply. These regulations require ALJs to adhere to certain standards when weighing medical opinions. First, the ALJ is required to consider and evaluate *every* medical opinion in the record, regardless of its source. *See* 20 C.F.R. § 416.927(b), (c) (emphasis added). The regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments, including "symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

Further, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). The regulations define a "treating source" as a claimant's "own acceptable medical source who provides . . . medical treatment or evaluation and who has . . . an ongoing treatment relationship" with a claimant. 20 C.F.R. § 416.927(a)(1). The "treating physician" rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 416.927(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, then "the ALJ, in determining how much weight is appropriate, must consider . . . the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Hargett*, 964 F.3d

at 552 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))[5]. The goal is to make clear to any subsequent reviewer the weight given and the reasons for giving that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*)

As for medical opinions from sources that are not "treating sources" as defined in 20 C.F.R. § 416.967(a)(1), the ALJ must consider the following factors set forth for the evaluation of medical opinions: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. § 416.927(c).

The ALJ must also consider opinions from medical sources who are not "acceptable medical sources" and from nonmedical sources using the same factors listed in § 416.927(c), although "not every factor for weighing opinion evidence will apply in every case." 20 C.F.R. § 416.927(f)(1). Additionally, the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 416.927(f)(2).

The Social Security regulations, rulings, and Sixth Circuit precedent charge the ALJ with the final responsibility for determining a claimant's residual functional capacity (RFC). *See, e.g.*, 20 C.F.R. § 416.927(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner."). Moreover, the Social Security Act and agency

---

[5] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed his application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.920(a)(4)(iv) ("the administrative law judge . . . is responsible for assessing your [RFC]"). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources."). *Id.* (footnote omitted). If the RFC conflicts with an opinion from a medical source, "the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

### B.  Dr. Dragon

Wendy Dragon, Ph.D. evaluated Plaintiff on six occasions between September 2016 and November 2016, and she completed a report in April 2017. (Doc. 11-5, PageID 1175-92.) Dr. Dragon opined that Plaintiff's academic skills were "adequate for simple tasks of daily living, but inadequate for activities that require high-level academic skills." (*Id.* at PageID 1186.) Dr. Dragon also opined that Plaintiff "may have difficulty maintaining a job." (*Id.*). She explained that in order for Plaintiff to remain focused on a task, "the task would need to be broken into simple tasks." (*Id.*) Dr. Dragon opined that Plaintiff "would need frequent breaks in order to sustain attention throughout the day." (*Id.*) According to Dr. Dragon, Plaintiff's frequent medical appointments would likely cause her "attendance [to] suffer." (*Id.*) She opined that Plaintiff "would benefit from a job where she can create her own hours or work from home." (*Id.*) As for social interactions, Dr. Dragon noted that constructive criticism from supervisors may "cause

her to feel overwhelmed and may hinder her productivity." She opined: "[P]laintiff may benefit most from constructive criticism that [is] presented in a manner that is appropriate to her cognitive functioning, being mindful of the vocabulary that is used." (*Id.*)

The ALJ assigned some weight to Dr. Dragon's opinion. (Doc. 11-10, PageID 989.) The ALJ explained:

> Some weight is given to Dr. Dragon's opinion, contained in her psychological assessment report (Exhibit 25F). For example, Dr. Dragon opined that the claimant was likely to have some difficulty in workplace social interaction and a limited ability to effectively receive constructive feedback, and that she has the mental functional capacity to complete simple activities of daily living, but is incapable of highly complex tasks. The undersigned finds these suggestions to be substantially consistent with the record and with personal observations of the claimant and her testimony during the hearing. None of these suggestions appear so extreme, however, that they cannot be fully accommodate [sic] by the residual mental functional capacity limitations noted above.

(*Id.*)

Dr. Dragon did not treat Plaintiff—she evaluated Plaintiff upon a referral from her attorney and her mental health provider to provide an assessment. (Doc. 11-15, PageID 1175.) Therefore, Dr. Dragon is not a "treating source." 20 C.F.R. § 416.927(a)(1). Nevertheless, the regulations required the ALJ to consider Dr. Dragon's opinion and apply the factors in 20 C.F.R. § 416.927(c). All of Dr. Dragon's statements constitute "medical opinions" as defined in the regulations, and the ALJ was required to evaluate these opinions in the decision. But the ALJ addressed only Dr. Dragon's suggested limitations about social interaction and the need for simple tasks of daily living. (Doc. 11-10, PageID 989.) He did not mention any of Dr. Dragon's other opinions. (*Id.*)

10

The ALJ reasoned that the opinion of Dr. Dragon that he acknowledged is fully accommodated by the mental limitations in the RFC. However, the opinions that the ALJ omitted are *more* limiting than the ALJ's RFC. For example, Dr. Dragon's opinions that Plaintiff would "have difficulty maintaining a job," would need frequent breaks to sustain attention, and would need a job where she can "create her own hours or work from home" are not addressed or accounted for in the RFC. Because the ALJ did not adopt these limitations and did not explain why he did not adopt them, the Court must conclude that the ALJ did not consider or weigh this portion of Dr. Dragon's opinion. By failing to consider the entirety of Dr. Dragon's opinion, the ALJ violated the applicable regulations. This violation constitutes an error of law warranting reversal.

C.    **Ms. Higgs-Adams**

Kay Higgs-Adams, L.I.S.W.-S. completed a Mental Impairment Questionnaire in October 2019. (Doc. 11-7, PageID 1780-82.) Ms. Higgs-Adams noted that she had been seeing Plaintiff since September 2018. (*Id.* at PageID 1780.) According to Ms. Higgs-Adams, Plaintiff experienced marked to extreme impairment in almost all of the areas of work-related mental functioning identified on the questionnaire. (*Id.* at PageID 1781-82.) She also opined that Plaintiff would be off task more than twenty percent of the workday and would miss work at least three times per month. (*Id.* at PageID 1780.)

The ALJ gave no weight to Ms. Higgs-Adams' opinion. (Doc. 11-10, PageID 989.) The ALJ explained:

> As with Ms. Hoefflin, this questionnaire is inconsistent both internally and with Ms. Higgs-Adams' own treatment notes. She opines that the claimant has extreme limitation in all sub-areas of memory and concentration, but

11

does not record concentration difficulties or disorientation as part of the claimant's signs and symptoms. She suggests significant social limitations, but, as noted above, did not record any social withdrawal in treatment notes (see Exhibit 33F). As with Ms. Hoefflin's opinion, despite Ms. Higgs-Adams being a treating source, these inconsistencies prevent the undersigned from giving any effective weight to the recommendations.

(*Id.*)

As an initial matter, Ms. Higgs-Adams is a social worker, and so she is not an "acceptable medical source" as defined in 20 C.F.R. § 416.902(a). *See also* SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 n.9 (6th Cir. 2016). Thus, Ms. Higgs-Adams cannot be a "treating source" under 20 C.F.R. § 416.927(a)(1), and she is not entitled to controlling or deferential weight. 20 C.F.R. § 416.927(c)(2); SSR 06-03p at *2. Nevertheless, she is a licensed healthcare worker and so is a "medical source" whose opinions are entitled to consideration using the factors in 20 C.F.R. § 416.927(c). 20 C.F.R. § 416.927(f); SSR 06-03p at *2-3.

Although the ALJ purportedly applied the 20 C.F.R. § 416.927(c)(3) supportability factor to Ms. Higgs-Adams' opinion, his analysis is unsupported by substantial evidence. First, the ALJ rejected Ms. Higgs-Adams' opinion as internally inconsistent: "She opines that [Plaintiff] has extreme limitation in all sub-areas of memory and concentration, but does not record concentration difficulties or disorientation as part of [Plaintiff's] signs and symptoms." (Doc. 11-10, PageID 989.) Yet this explanation ignores the "signs and symptoms" section of the form that Ms. Higgs-Adams observed Plaintiff with poor memory, sleep disturbance, mood disturbances, decreased energy, recurrent panic attacks, obsessive or compulsions, and

12

generalized persistent anxiety—all of which could be expected to affect Plaintiff's ability to sustain memory and concentration. (Doc. 11-17, PageID 1780.) Thus, the ALJ's statement that Ms. Higgs-Adams' opinion is internally inconsistent mischaracterizes the provider's observations on the questionnaire, and so his conclusion is unsupported by substantial evidence.

Second, the ALJ finds that Ms. Higgs-Adams' opinion is inconsistent with her own treatment notes: "She suggests significant social limitations, but, as noted above, did not record any social withdrawal in treatment notes . . . ." (Doc. 11-10, PageID 989.) This conclusion is also unsupported by substantial evidence. Although Ms. Higgs-Adams documented a few normal mental status findings during the counseling sessions (*see generally* Doc. 11-17, PageID 1783-1803), her progress notes reflect that Plaintiff presented as anxious, frustrated, agitated, tense, worried, speaking rapidly, and crying on many occasions. (*See, for example,* Doc. 11-17, PageID 1783, 1786, 1795, 1797-1801, 1803.) These findings could support Ms. Higgs-Adams' social limitations. By failing to acknowledge or evaluate any of these findings, the ALJ mischaracterized Ms. Higgs-Adams' progress notes. Accordingly, the ALJ's analysis of Ms. Higgs-Adams' opinion is unsupported by substantial evidence. This constitutes reversible error and is another reason why the case should be remanded.

### D. <u>Prior Remand Order</u>

When this claim was previously on appeal, the Court identified reversible error in the ALJ's weighing of opinion evidence provided by Miriam Hoefflin, M.A., Jessica Marshall, D.O., and the State agency medical and psychological consultants. (*Id.* at

13

PageID 1055-59.) Plaintiff contends that upon appeal, the ALJ "appears to have simply repeated most if not all of these errors." (Doc. 13, PageID 1815.) Plaintiff's argument is persuasive. The ALJ again "erroneous[ly] and blanket[ly] reject[ed]" the opinions of Plaintiff's treating providers, and he again applied "blithe scrutiny" to the opinions of the State agency reviewing physicians and psychologists. (*Compare* Doc. 11-11, PageID 1056-59, *with* Doc. 11-10, PageID 988-90.) Because the ALJ reversibly erred in his analysis of the opinions discussed above—and because this case must be remanded for an immediate award of benefits as discussed below—this Court need not provide further explanation about the ALJ's non-compliance with the prior remand order.

## VI. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding that the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for

14

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

In this case, the evidence of disability is strong, and contrary evidence is lacking. *Faucher*, 17 F.3d at 176. The opinions of a treating physician (Doc. 11-8, PageID 737-39), two counselors (Doc. 11-7, PageID 370-72, 444, 733-36), a social worker, (Doc. 11-7, PageID 1780-82), and an independent examining psychologist (Doc. 11-5, PageID 1175-92) support a finding of disability. The only medical source opinions which support a non-disability finding are those of the State agency medical and psychological consultants, who did not treat or evaluate Plaintiff and did not review critical evidence, including the opinions from Dr. Dragon and Ms. Higgs-Adams. (*See* Doc. 11-3, PageID 115-21, 131-38). Additionally, as noted above, the ALJ committed the same errors as in the prior unfavorable decision when he assigned substantial weight to the reviewing medical consultants and moderate weight to the reviewing psychological consultants. (*See* Doc. 11-10, PageID 989-90; Doc. 16, PageID 1009-10.)

The VE's testimony in response to the ALJ's RFC also supports an immediate award of benefits. According to the November 2019 hearing transcript, the ALJ first asked the vocational expert (VE) to consider an individual with Plaintiff's vocational

factors, "who is limited to performing work at the light level of exertion," and with the following limitations:

> Limited to frequent crouching, crawling, kneeling, stooping, and climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. No exposure to hazards such as unprotected heights or dangerous machinery. Limited to frequent use of the hands for handling and fingering. No use of the lower extremities for operating foot controls. No concentrated exposure to respiratory irritants. Limited to performing simple, repetitive tasks with an SVP of 1 or 2. Occasional contact with coworkers and supervisors. No contact with members of the public. No fast paced production work or [j]obs which involve strict production quotas. And limited to performing jobs which involve very little if any change in the job duties or the work routine from one day to the next day.

(Doc. 11-10, PageID 1020-21.) The VE responded that there would be jobs available, and she provided the following examples: Marking Clerk (DOT number 209.587-034, approximately 300,000 jobs); Routing Clerk (DOT number 222.687-022, approximately 75,000 jobs); and Dispatcher (DOT number 222.587-038, approximately 52,000 jobs). (*Id.* at PageID 1021.) The ALJ cited to these jobs at Step 5 to support his conclusion that Plaintiff is capable of making a "successful adjustment to other work that exists in significant numbers in the national economy." (Doc. 11-10, PageID 991.)

But the above hypothetical does not fully account for the RFC in the decision. The ALJ's RFC includes an additional limitation for no more than superficial contact with supervisors and coworkers. (Doc. 11-10, PageID 985.) The ALJ defined "superficial contact" as "retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals, but as lacking the ability to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts." (*Id.*) And the ALJ asked the VE about superficial contact in his second hypothetical:

16

> I'd like you to further assume the individual that I described in this first hypothetical would be further restricted to having only superficial contacts with coworkers and supervisors. I'll define superficial contact for purposes of this hypothetical as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but is unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts.

(Doc. 11-10, PageID 1021-22.) The VE responded, "There would [be] no examples." (*Id.* at PageID 1022.)

The Commissioner does not dispute the ALJ's RFC and in fact supports it. (*See* Doc. 16, PageID 1836.) Thus, the VE's testimony in response to the second hypothetical—which parallels the ALJ's RFC—clearly shows that Plaintiff is incapable of performing a significant number of jobs in the national economy that would accommodate her combined limitations. Therefore, the ALJ's Step 5 finding is flawed and the record adequately establishes Plaintiff's entitlement to benefits. *Faucher*, 17 F.3d at 176.

Even without considering the ALJ's erroneous Step 5 finding, the VE's responses to subsequent hypotheticals also establishes Plaintiff's entitlement to benefits. The VE testified that absences which average "three times a month over an extended period" would be work preclusive. (Doc. 11-10, PageID 1022.) The VE also testified that a person who would be "off task for an average of 15 percent of each given work day" would not be able to sustain full-time competitive employment. (*Id.* at PageID 1023.) These hypotheticals account for the cumulative opinions of Plaintiff's treating physician, her counselors and social worker, and an independent examining psychologist, as discussed above. Thus, proof of disability is strong—based on the opinion evidence in the

17

record which accounts for Plaintiff's combined impairments, as well as the VE's

testimony—and contrary evidence is lacking.

Substantial evidence on the record as a whole supports a finding of disability.

*Gentry,* 741 F.3d at 730. This case should be remanded for an award of benefits.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 13) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for an immediate award of benefits; and

4. This case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge